UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONTAY D. MARTIN, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:21-cv-02763-JPH-MG ) |
| DENNIS REAGLE, | ) ) ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS AND DENYING A CERTIFICATE OF APPEALIBILITY**

Dontay Martin was convicted of four counts of attempted murder and related crimes in an Indiana state court. Mr. Martin now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 based on ineffective assistance of counsel. For the reasons set forth in this order, the Court **denies** the petition. A certificate of appealability shall not issue.

**I.
Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts as follows:

> In the early morning hours of September 9, 2012, Martin was at a nightclub in Fort Wayne with two of his fellow gang members, Alfonso Chappell and Traneilous Jackson. An altercation ensued between Jackson and Jermaine Loyall in which Jermaine was stabbed in the back.

> An ambulance was summoned for Jermaine. Eric Zeigler of the Fort Wayne Fire Department arrived at the scene to drive the ambulance to the hospital while Jeromy Yadon and Diana Lantz treated Jermaine in the back of the ambulance. The ambulance left for the hospital, and Jermaine's sisters, Dominic Loyall and Latosha Loyall, followed the ambulance in a Chevy Impala driven by Dominic's friend, Lashonda Conwell.
>
> Martin, Jackson, Chappell, and another man followed the ambulance in Chappell's car. Chappell was driving, Jackson was in the front passenger seat, and Martin was in backseat on the passenger side. Martin instructed Chappell to "follow the f* * * * *g ambulance right now. Somebody got to f* * * * *g die, they not making it to the hospital." Tr. p. 156. When Chappell's car caught up with the Impala, Jackson was armed with his own Ruger, which could hold sixteen cartridges, and Martin was armed with Chappell's Glock 17 with an extended magazine, which was designed to hold thirty-four cartridges. As Chappell drove alongside the Impala, Jackson and Martin fired at it. Then, as Chappell drove alongside the ambulance, Jackson and Martin fired at it.
>
> Although no one in the ambulance was shot, Yadon was injured by bullet fragments and glass shards. As for the occupants of the Impala, Conwell and Dominic were each shot once and Latosha was shot six times. At least twenty casings from the Glock were recovered at the intersection where the shooting occurred. Several casings from the Ruger were also recovered. Eighteen bullet holes were identified in the Impala, and at least seventeen bullet holes were identified in the ambulance. After the shooting, Chappell fled until police used stop sticks to disable his car.
>
> On September 19, 2012, the State charged Martin with four counts of Class A felony attempted murder relating to Jermaine, Dominic, Latosha, and Conwell, one count of Class C felony carrying a handgun without a license, one count of Class C felony battery relating to Yadon, two counts of Class D felony criminal recklessness relating to Lantz and Ziegler, and one count of Class D felony criminal gang activity. A jury found Martin guilty as charged.

*Martin v. State*, 2013 WL 6198260, at *1 (Ind. Ct. App. Nov. 27, 2013) (in the record at dkt. 6-7).

Mr. Martin was sentenced to 170 years in prison. *Id.* The Indiana Court of Appeals affirmed, and Mr. Martin did not petition to transfer to the Indiana

Supreme Court. *Id.*; dkt. 6-2 at 5.

Mr. Martin then filed a state petition for post-conviction relief, alleging that his trial counsel was ineffective for (1) failing to move to suppress the buccal swabs taken from him that resulted in DNA evidence; (2) not adequately cross-examining witnesses at trial; and (3) failing to object to prosecutorial misconduct. Dkt. 6-8. The post-conviction court denied his petition and the Indiana Court of Appeals affirmed. Dkt. 6-9; dkt. 6-13. Mr. Martin filed a pro se petition to transfer to the Indiana Supreme Court which was denied. Dkt. 6-15.

Mr. Martin then filed his federal habeas petition, raising the same grounds for relief as those he exhausted in state court. In his reply, however, he abandons his first and last grounds of relief, so the only remaining federal grounds for relief are his claims that: (1) the trial counsel failed to adequately cross examine four witnesses; and (2) the Indiana Court of Appeals did not correctly determine whether Mr. Martin was prejudiced by the cumulative impact of his trial counsel's errors. Dkt. 13 at 1.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and

quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual— why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas

4

court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that "counsel's assistance was so defective as to require reversal," a

5

petitioner must show: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The Indiana Court of Appeals cited *Strickland* and correctly stated the standard for ineffective assistance of counsel claims:

> [A] defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors the result of the proceeding would have been different.

*Martin v. State (Martin II)*, 2021 WL 1398170, *4 (Ind. Ct. App. April 14, 2021) (in the record at dkt. 6-13).

### A. Failure to Cross-Examine Witnesses

Mr. Martin argues that his trial counsel was ineffective when he failed to sufficiently cross-examine four witnesses: Mr. Hedges, Ms. Davis, Officer Noll,

and Dominic Loyall. The Indiana Court of Appeals addressed this issue as three separate claims: (1) failure to impeach Mr. Hedges and Ms. Davis; (2) failure to impeach Officer Noll; and (3) failure to cross-examine Ms. Loyall.

### 1. Witnesses Hedges and Davis

Mr. Hedges and Ms. Davis were disinterested bystanders who witnessed the shootings and testified at trial that they saw gunfire coming from both the front and back passenger side windows. Trial Trans., dkt. 16-4 at 27, 37.[1] When interviewed by the police, Mr. Hedges had initially said he saw shots coming from the front passenger seat, and later both Mr. Hedges and Ms. Davis told police they could not determine whether the shots were coming from the front or back seat. PCR App., dkt. 16-8 at 113, 132. Trial counsel did not impeach these witnesses with their statements to police.

The Indiana Court of Appeals held that, assuming trial counsel performed deficiently by failing to impeach these witnesses, Mr. Martin was not prejudiced by this failure because the other evidence against him was overwhelming. *Martin II* at 5-6. The state court reasonably applied *Strickland* in this regard. The driver and front-seat passenger testified that Mr. Martin ordered the driver to follow the ambulance. Trial Trans., dkt. 16-4 at 155-158, 192. The driver, Alfonso Chappell, testified that Mr. Martin was acting aggressive and had Mr. Chappell's gun, so Mr. Chappell was afraid to disobey Mr. Martin's order to follow the ambulance. *Id.* Mr. Chappell testified that both Mr. Jackson and Mr. Martin

---

[1] In some cases, the transcript page numbers differ by one from the page numbers of the pdf document. The Court cites to the pdf page number.

7

pointed and fired guns at the ambulance and car. *Id.* Mr. Jackson testified that he shot his gun out of the front passenger window, that Mr. Martin had the driver's gun in the back passenger seat, that Mr. Jackson assumed someone fired the other gun, but that it was not the driver or the passenger behind the driver. *Id.* at 192-95. Mr. Martin's blood was found on Mr. Chappell's gun. Dkt. 16-5 at 20. Mr. Chappell testified that after the shooting he called 911. He didn't speak because he did not want Mr. Martin and Mr. Jackson to know what he was doing. *Id.* at 159-60.

Considering this evidence, the state court reasonably concluded that there was not a reasonable probability that the outcome of Mr. Martin's trial would have been different had his counsel impeached Mr. Hedges and Ms. Davis with their prior statements given to the police during interviews.

### 2. Officer Noll

Officer Noll testified at trial that she recovered a gun with a red substance that appeared to be dried. Trial Trans. at 185. She testified that "[i]f my memory services me correct, it was on the top, on the slide, and I believe there was some down by the handle." But her report only mentioned a red substance on the top of the weapon, not on the handle. PCR App., dkt. 16-8 at 115. Again, the Indiana Court of Appeals found that Mr. Martin was not prejudiced by his counsel's failure to impeach Officer Noll with the discrepancy between her report and her trial testimony. *Id.* at 6. The state court held that the difference in Officer Noll's statements about where blood was located on the gun was "miniscule." *Martin II* at 6.

Mr. Martin argues that his blood was on the top of the gun because the driver of the car handed the weapon to him to toss out of the car window, and that Officer Noll's testimony that his blood was also by the handle gave the jury the impression that he had fired the gun instead of just being handed the gun from Mr. Chappell and then throwing it out the window. Dkt. 13 at 10. But as the Indiana Court of Appeals noted, the jury had the opportunity to inspect the gun and evaluate for themselves where the red substance was located. *Martin II* at 6. Mr. Martin further argues that the location of the red substance on the gun was obscured by powder that coated the gun. Dkt. 13 at 8. The cited testimony, however, is only that there was powder on the gun—not that it "covered" the gun or obscured the red substance. Dkt. 16-4 at 164. Regardless, the jury had the opportunity to visually inspect the gun and it's reasonable to infer—especially given the uncertain nature of Officer Noll's testimony—that it would have done so if it had been crucial to the outcome of their deliberations. Considering the weight of the evidence against Mr. Martin, it's reasonable to conclude that the jury didn't believe that was the case and found Mr. Martin guilty based on the other evidence. The Indiana Court of Appeals therefore did not apply *Strickland* unreasonably.

### 3. Dominic Loyall

Mr. Martin argues that his counsel should have cross-examined Dominic Loyall, who was in the car that was shot at and testified at trial that she did not see the person who fired the shots. Dkt. 13 at 4; Trial Trans., dkt. 16-4 at 82. During her interview with the police, she gave additional statements that were

9

not elicited at trial, including that she had seen "a dude hanging out the front passenger window" during the shooting. PCR App., dkt. 16-8 at 137. The Indiana Court of Appeals held that the statements Ms. Loyall made to the police would have been cumulative of Mr. Jackson's testimony that he leaned out of the front passenger window to shoot so the shell casings would eject outside the car. Dkt. 6-13 at 16–17. The court reasoned that testimony from a victim that she saw someone in the front passenger seat would have told the jury little to nothing about whether someone was shooting from the back seat. Thus, it was not ineffective assistance to fail to cross-examine Ms. Loyall.

At Mr. Martin's post-conviction hearing, Ms. Loyall testified that she did not see anyone in the back seat shoot at her and did not see anyone in the back seat area "hanging out the window." PCR Trans., dkt. 16-11 at 41. She further testified that no one "could have convinced [her] that someone in the back seat of the white car shot at [her] or the car [she] was in." *Id.* She did not testify, however, that she was convinced that no one was shooting from the back seat of the car. Indeed, when asked if she knew if anyone "was or was not" shooting from the back seat, she answered "no." *Id.* at 42. She added that "[t]he **only thing** I can say is I seen someone hanging out the window, of the passenger front window. **That's it**." *Id.* at 43 (emphases added).

Respondent argues that the "Indiana Court of Appeals reasonably decided that Martin failed to prove ineffective assistance because his counsel did not cross-examine Dominic [Loyall]." Dkt. 6 at 17. Mr. Martin argues that the state court unreasonably determined the facts when it relied only on Ms. Loyall's

10

testimony that she saw someone leaning out of the front passenger seat and ignored her testimony that she could not be convinced someone was shooting from the back passenger seat. Dkt. 13 at 8. But it's not unreasonable to conclude that Ms. Loyall's PCR testimony would have been cumulative, since she could "only" have testified that shots were fired from the front passenger seat (as other witnesses testified at trial) and that she did not see who fired the shots (as she testified at trial). While she testified that she could not be convinced that someone shot from the back seat, she added that she simply did not know, and therefore was not convinced either way. PCR Trans., dkt. 16-11 at 42.

Because of those explicit limitations in Ms. Loyall's PCR testimony, this Court cannot say that the Indiana Court of Appeals' resolution of this claim was based on an unreasonable determination of fact. Factual determinations are not unreasonable under § 2254(d)(2) "merely because the federal habeas court would have reached a different conclusion in the first instance," nor are they unreasonable if "[r]easonable minds reviewing the record might disagree about the finding in question." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (cleaned up). Here—at most—reasonable minds reviewing the record could disagree as to whether Ms. Loyall's testimony at the post-conviction hearing would have been cumulative other testimony presented at trial.

So, even if trial counsel performed deficiently when he failed to elicit testimony from Ms. Loyall at trial that she could not be convinced someone was shooting from the back passenger window, Mr. Martin was not prejudiced. "The prejudice prong requires the defendant or petitioner to 'show that there is a

11

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Laux*, 890 F.3d at 674. As discussed above, the evidence against Mr. Martin was strong. His blood was on one of the two guns used in the shooting. Mr. Chappell testified that Mr. Martin fired that gun at the car. Trial Trans., dkt. 16-4 at 155-158, 192. It is undisputed that the front passenger, Mr. Jackson, fired the other gun. Moreover, the three remaining occupants of the car were the driver, a very intoxicated male in the seat behind the driver, and Mr. Martin in the back passenger-side seat.

Mr. Martin therefore has not shown that the Indiana Court of Appeals applied *Strickland* unreasonably, so he is not entitled to relief on this ground.

### B. Cumulative Prejudice

The Indiana Court of Appeals held that it did not need to address Mr. Martin's cumulative prejudice argument because Mr. Martin had not established that his trial counsel had made any errors. *Martin II* at 8. This was incorrect. That court decided Mr. Martin's claims that trial counsel failed to impeach witnesses Hedges, Davis, and Noll on the prejudice prong, without deciding that there was no deficient performance.

If a court determines that more than one of the petitioner's claims fails due to a lack of prejudice, the court must then assess whether the potential prejudice from each of those instances combined would reach *Strickland*'s prejudice threshold. *See, e.g., Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012) ("The question is whether counsel's entire performance . . . prejudiced [the petitioner].

12

By analyzing each deficiency in isolation, the [state] appellate court clearly misapplied the *Strickland* prejudice prong.").

The state court considered the combined effect of counsel's failure to impeach Mr. Hedges and Ms. Davis: "Evidence that there were multiple guns fired during the shooting, and testimony from Martin's co-perpetrators that he was one of the shooters, was overwhelming. As the post-conviction court correctly noted, that evidence would have been strong even without Davis' and Hedges' testimony." *Id.* at 6. But the failure to analyze whether the combined effect of failing to impeach all three witnesses prejudiced Mr. Martin was an unreasonable application of *Strickland*. Therefore, this Court will perform a *de novo* cumulative prejudice analysis. *Thomas v. Clements*, 789 F.3d 760, 766–68 (7th Cir. 2015) (if state court's adjudication of a claim was unreasonable under § 2254(d), then federal habeas review of that claim is *de novo*).

First, while the failure to impeach Mr. Hedges and Ms. Davis on whether they were able to tell if shots were being fired from the back passenger seat undoubtedly had some impact on the trial, that error must be evaluated against the weight of the evidence. Doing so, the Court concludes there is no reasonable likelihood that the outcome of Mr. Martin's trial would been different had his counsel impeached these two witnesses. Adding counsel's failure to impeach Officer Noll and cross examine Ms. Loyall does not tip the cumulative prejudice scale in Mr. Martin's favor.

Substantial evidence established that Mr. Martin possessed and fired Mr. Chappell's Glock 17. Both the driver—Mr. Chappell—and the front seat

13

passenger—Mr. Jackson—testified at trial that Mr. Martin ordered Mr. Chappell to follow the ambulance. Mr. Chappell testified that he was afraid to disobey Mr. Martin because he was acting aggressive and had the Glock in his hand. Mr. Chappell testified that Mr. Martin fired the Glock both at the car and the ambulance, while Mr. Jackson testified that he saw Mr. Martin holding the Glock. Moreover, Mr. Martin's blood was found on the Glock. Finally, numerous shell casings from the Glock were recovered from the scene, dkt. 6-7 at 1. Collectively, the evidence gave the jury ample grounds to conclude that Mr. Martin fired the Glock multiple times at the two vehicles.

Had counsel's performance not been deficient, the jury would have also heard:

1. Hedges and Davis, who each testified that they saw gunfire coming from the front and back of the passenger side of the car, originally told the police they could not determine whether the shots were coming from the front or back seat. PCR App., dkt. 16-8 at 113, 132.

2. Officer Noll's report only identified blood on top of the Glock, not on the handle.

3. Ms. Loyall did not see anyone shooting from the back seat area of the car, and could not be convinced that someone was.[2]

---

[2] While the Indiana Court of Appeals did not unreasonably apply *Strickland* in finding no ineffective assistance in the decision not to cross-examine Ms. Loyall, the court was not crystal clear whether it reached that conclusion under the deficient performance prong or the prejudice prong. Therefore, out of an abundance of caution, this Court considers this issue as well in addressing cumulative prejudice.

14

Mr. Martin's theory of defense was that someone else in the car must have shot the Glock—he only handled it because someone handed it to him to throw it out the window. While counsel's errors may have weakened Mr. Martin's ability to convince the jury to accept his version of events or otherwise find that the State had not proven its case beyond a reasonable doubt, Mr. Martin "has fallen short of demonstrating what the Supreme Court has told us is essential to relief rooted in a claim of ineffective assistance of counsel—that the 'likelihood of a different result must be substantial.'" *Myers v. Neal*, 975 F.3d 611, 627 (7th Cir. 2020).

As the state court recognized, the jury had the opportunity to view the gun themselves. If witnesses Hedges, Davis, and Loyall had testified that they either could not tell whether the shots were coming from the front or back passenger side of the car, or that they did not see shots from the back of the car, the jury would have still been left with testimony from Mr. Chappell and Mr. Jackson that Mr. Martin had Mr. Chappell's gun in the backseat, evidence that Mr. Martin's blood was on the gun, and evidence that the gun had been fired numerous times at the ambulance and other car. Even considering all of trial counsel's potential errors as a whole, there is no reasonable likelihood that the outcome of Mr. Martin's trial would have been different had his counsel impeached these four witnesses.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*,

137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Reasonable jurists would all agree that Mr. Matin's grounds for relief are meritless. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Mr. Martin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability is **denied**. Final Judgment in accordance with this decision shall issue.

**SO ORDERED.**

Date: 11/7/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Tyler G. Banks
INDIANA ATTORNEY GENERAL
tyler.banks@atg.in.gov

Russell W Brown Jr.
The Region Lawyers, Inc.
rbrown@theregionlawyers.com